| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SUMMIT REFRIGERATION GROUP, INC.,<br>MICHAEL P. CONTI,<br>FREDERICK P. ANDERSON, and<br>RICHARD DEGROOT,<br><br>Defendants. | '05 JUN 14 P12 :59<br><br>Case No.<br>[T. 18 U.S.C. §§ 2 and 1832(a)(1),<br>(a)(2), (a)(3), (a)(4), and (a)(5)]<br><br>**05 CR151** |

## INDICTMENT

### COUNT ONE

**THE GRAND JURY CHARGES:**

1. From on or about December 1, 2003, through on or about April 13, 2004, in the state and Eastern District of Wisconsin,

**SUMMIT REFRIGERATION GROUP, INC.,
MICHAEL P. CONTI,
FREDERICK P. ANDERSON, and
RICHARD DEGROOT,**

knowingly conspired with each other. The defendants intended to convert trade secrets, that are related to and included in a product produced for and placed in interstate commerce, to the economic benefit of anyone other than the owner thereof, and intended and knew that the offense would injure the owner of those trade secrets. The defendants conspired to commit the following offenses against the United States:

(a) To steal and without authorization appropriate, take, and carry away trade secrets, in violation of 18 U.S.C. § 1832(a)(1);

(b) Without authorization, to copy, duplicate, download, upload, and destroy trade secrets, in violation of 18 U.S.C. § 1832(a)(2); and

(c) To possess trade secrets, knowing the same to have been stolen and obtained without authorization, in violation of 18 U.S.C. § 1832(a)(3).

2. During the conspiracy:

(a) Dual Temp Wisconsin, Inc. (hereinafter DTW) was, and still is, a company with an office in Brookfield, Wisconsin engaged in the business of designing, installing, and maintaining large industrial refrigeration systems in various states, mainly for companies in the food industry. DTW is an authorized alias for Dual Temp Installations, Inc., which is a wholly owned subsidiary of Dual Temp of Illinois, Inc., an Illinois corporation with headquarters in Chicago, Illinois.

(b) Defendants Conti, Anderson, and DeGroot were DTW employees who had been planning since at least June of 2003 to leave DTW and found their own rival refrigeration company.

(c) That company was Summit Refrigeration Group, Inc. (hereinafter Summit), incorporated on or about February 18, 2004, in the state of Wisconsin. Summit was owned and operated by defendants Conti, Anderson, and DeGroot along with two financial investors who owned shares of Summit.

(d) On or about March 2, 2004, defendants Conti, Anderson, and DeGroot left the employment of DTW and physically left the DTW offices with trade secrets belonging to DTW in the form of paper records and copies of computer records.

(e) Within a few days, defendants Conti, Anderson, and DeGroot were operating Summit out of an office at 13262 West Silver Spring Drive in Menomonee Falls, Wisconsin, to which they brought the trade secret information they had taken from DTW.

(f) In their theft, copying, possession, and use of trade secrets from DTW, defendants Conti, Anderson, and DeGroot acted within the scope of their authority as owners and operators or Summit and acted for the benefit of Summit.

2

## OVERT ACTS

In furtherance of the conspiracy and to effect its objects, the defendants performed the following acts:

1. On or about December 17, 2003, defendant Conti asked an information technology specialist from Dual Temp in Chicago to provide him with electronic as-built files burned onto disks for more than 80 jobs which Dual-Temp or DTW had done for more than 30 customer companies. As-built files are construction drawings of installed projects which include changes from original drawings, if changes were made during installation.

2. In late December, 2003 or early January, 2004, defendant Conti directed a DTW employee to make and provide him with a copy of all of his computer files because he needed duplicates. The copies included proposals, change orders, and information on projects Conti had worked on for DTW.

3. In December, 2003 or January, 2004, defendant Conti directed a DTW employee to put together a budget of expenses normally incurred by DTW.

4. On or about February 9, 2004, defendant Conti again asked an information technology specialist from Dual Temp in Chicago to provide him with electronic as-built files burned onto disks for more than 80 jobs which Dual Temp or DTW had done for more than 30 customer companies.

5. On or about March 1, 2004, the defendants copied numerous records from DTW's computer system including, but not limited to, DTW proposals and quotes for possible projects with various customers, DTW forms for computing costs on projects, internal DTW memos regarding business issues, and lists of DTW equipment. After they were copied, the defendants deleted these files from DTW's computers.

3

6. On or about March 2, 2004, the defendants took, without authorization, from DTW's office numerous records including, but not limited to, the following:

   a. Disks with computerized AUTO-CAD drawings of projects installed by DTW;

   b. Approximately 60 operations and maintenance manuals compiled by DTW regarding systems DTW had installed which are valuable and important for future service work and modifications on those projects because the manuals contain safety information, repair histories, and confidential drawings specific to those systems;

   c. Approximately 130 customer files regarding projects that DTW was bidding to be awarded which contained DTW bids, correspondence to and from potential customers, detailed descriptions of specifications and components which are part of the bids, communications between DTW and subcontractors regarding those specifications and components, and notes made by DTW regarding the projects;

   d. Dual Temp's employee compliance manual which contained safety information developed over years by Dual Temp;

   e. Backup compact disks of DTW documents;

   f. Paper drawings of numerous refrigeration systems previously installed for various customers by Dual Temp or DTW. Each drawing bore the warning, "This drawing is the intellectual property of Dual Temp companies and it is not to be reproduced, copied in any format or manner whatsoever without first obtaining our express written permission and consent";

   g. Copies of e-mails between DTW and customers regarding DTW proposals on pending projects;

   h. A DTW pre-qualification form with information on the company itself, past projects done by the company, pending jobs being done by the company, company safety records, and company safety procedures;

   i. A DTW overhead analysis; and

   j. A DTW labor cost analysis.

4

7. By on or about March 10, 2004, while in possession of DTW's Operations and Maintenance Manuals on approximately 60 systems installed by DTW, the defendants hired away from DTW to Summit several service and maintenance technicians.

8. Defendant DeGroot had been negotiating on behalf of DTW with All-Temp Refrigeration of Delphos, Ohio, to provide work as a subcontractor on a project All-Temp was bidding to do at Lakeview Farms in Bristol, Wisconsin. On March 1, 2004, defendant DeGroot sent All-Temp an estimate of $167,885 for that work. DTW had already performed design and budgeting work for this project. On March 10, 2004, defendant DeGroot sent All-Temp an unsolicited proposal from Summit for the same amount for the same work.

9. Since November 2003, defendant DeGroot had been negotiating on behalf of DTW with Kenosha Beef of Kenosha, Wisconsin, to revamp Kenosha Beef's refrigeration system. On February 12, 2004, defendant DeGroot sent Kenosha Beef a proposal to do the work for $398,450. DTW had already performed design and budgeting work for this project. On March 10, 2004, defendant DeGroot sent Kenosha Beef a proposal from Summit to do the same work for the same amount of money.

10. Since October, 2003, defendant Conti had been negotiating on behalf of DTW with LeSaffre Yeast Corporation of Headland, Alabama, to install a refrigeration system at a new facility LeSaffre was going to build in Cedar Rapids, Iowa. Defendant Conti had submitted to LeSaffre a proposal for that work to be done by DTW. DTW had already performed design and budgeting work for this project. In the spring of 2004, defendant Conti submitted to LeSaffre a very similar proposal for the same work to be done by Summit, a new company Conti informed LeSaffre he had formed that spring.

11. On or before April 13, 2004, defendants Conti, Anderson, and DeGroot brought to their personal offices at Summit, as well as to other areas in the Summit offices, various records from DTW including, but not limited to:

    a. Numerous DTW Operations and Maintenance Manuals as described in overt act 6(b) above;

    b. Numerous DTW price quotes on various projects DTW was seeking to obtain which included details on exactly what DTW proposed to provide on each project;

    c. Numerous paper DTW drawings of various systems DTW installed or sought to install for various customers bearing DTW's confidentiality warning as described in overt act 6(f) above;

    d. Numerous DTW computerized AUTO-CAD drawings of various systems DTW had installed or sought to install, each bearing DTW's confidentiality warning;

    e. Lists of DTW bids on various projects;

    f. DTW personnel records including rates of pay;

    g. DTW records on pricing and costs of various jobs;

    h. Correspondence between DTW and various customers and subcontractors;

    i. The DTW pre-qualification form described in overt act 6(h) above;

    j. Eight CD-Roms containing computerized copies of DTW information including, but not limited to, vehicles, tools, quotes and proposals on pending and past projects, pay rates for various employees, memos, maintenance agreements with customers, and as-built drawing files;

    k. Documents describing Dual Temp policies and procedures on various business issues; and

    l. Quotes from subcontractors to Dual Temp regarding various projects.

12. On or before April 13, 2004, the defendants uploaded approximately 15 of DTW's AUTO-CAD drawings onto Summit's computer server.

13. On or before April 13, 2004, defendant DeGroot brought to his residence in Kewaskum, Wisconsin, various items belonging to DTW including, but not limited to:

- a. Quote cover pages for projects with more than 20 customers;

- b. Communications between DTW and various customers regarding various projects;

- c. Records on DTW's bases for bids on various projects, including items to be installed, labor rates, numbers of hours of labor, necessary material and equipment to be used, and copyrighted DTW drawings; and

- d. Communications from subcontractors offering to participate in various projects and providing specific information on the components the subcontractors proposed to provide for various projects.

All in violation of Title 18, United States Code, Section 1832(a)(5).

## COUNT TWO

**THE GRAND JURY FURTHER CHARGES:**

On or about March 2, 2004, at Brookfield, in the state and Eastern District of Wisconsin,

**SUMMIT REFRIGERATION GROUP, INC.,
MICHAEL P. CONTI,
FREDERICK P. ANDERSON, and
RICHARD DEGROOT,**

with intent to convert trade secrets, that were related to a product that is placed in interstate commerce, to the economic benefit of someone other than the owner thereof, and intending and knowing that the offense would injure the owner of those trade secrets, knowingly stole and without authorization appropriated, took, and carried away trade secret information belonging to Dual Temp Wisconsin, and attempted to do so.

The trade secrets involved in this count were:

a. Computerized AUTO-CAD drawings of projects installed by DTW;

b. Approximately 60 operations and maintenance manuals compiled by DTW regarding systems DTW had installed, which contained safety information, repair histories, and confidential drawings specific to those systems;

c. Approximately 130 customer files regarding projects that DTW was bidding to be awarded which contained DTW bids, detailed descriptions of specifications and components which are part of the bids, and notes made by DTW regarding the projects;

d. Dual Temp's employee compliance manual which contained safety information developed over years by Dual Temp; and

e. Paper drawings of numerous refrigeration systems previously installed for various customers by Dual Temp or DTW. Each drawing bore the warning, "This drawing is the intellectual property of Dual Temp Companies and it is not to be reproduced, copied in any format or manner whatsoever without first obtaining our express written permission and consent."

8

All in violation of Title 18, United States Code, Sections 1832(a)(1) and (a)(4) and Section 2.

## COUNT THREE

**THE GRAND JURY FURTHER CHARGES:**

On or about March 2, 2004, at Brookfield, in the state and Eastern District of Wisconsin,

**SUMMIT REFRIGERATION GROUP, INC.,
MICHAEL P. CONTI,
FREDERICK P. ANDERSON, and
RICHARD DEGROOT,**

with intent to convert trade secrets, that were related to a product that is placed in interstate commerce, to the economic benefit of someone other than the owner thereof, and intending and knowing that the offense would injure the owner of those trade secrets, knowingly and without authorization copied, duplicated, downloaded, and destroyed trade secret information belonging to Dual Temp Wisconsin, and attempted to do so.

The trade secrets involved in this count were computerized AUTO-CAD drawings of projects installed by DTW, which the defendants also deleted from DTW's computer system.

All in violation of Title 18, United States Code, Sections 1832(a)(2) and (a)(4) and Section 2.

## COUNT FOUR

THE GRAND JURY FURTHER CHARGES:

On or about April 13, 2004, at Menomonee Falls, in the state and Eastern District of Wisconsin,

**SUMMIT REFRIGERATION GROUP, INC.,
MICHAEL P. CONTI,
FREDERICK P. ANDERSON, and
RICHARD DEGROOT,**

with intent to convert trade secrets, that were related to a product that is placed in interstate commerce, to the economic benefit of someone other than the owner thereof, and intending and knowing that the offense would injure the owner of those trade secrets, knowingly possessed trade secret information, knowing it to have been stolen and obtained without authorization of its owner, Dual Temp Wisconsin, and attempted to do so.

The trade secrets involved in this count were:

a. Numerous DTW Operations and Maintenance Manuals as described in overt act 6(b) in count one of this indictment;

b. Numerous DTW price quotes on various projects DTW was seeking to obtain which included details on exactly what DTW proposed to provide on each project;

c. Numerous paper DTW drawings of various systems DTW installed or sought to install for various customers bearing DTW's confidentiality warning as described in overt act 6(f) in count one of this indictment;

d. Numerous DTW computerized AUTO-CAD drawings of various systems DTW had installed or sought to install, each bearing DTW's confidentiality warning;

e. Lists of DTW bids on various projects;

f. DTW personnel records including rates of pay;

g. DTW records on pricing and costs of various jobs; and

11

    h.    Eight CD-Roms containing computerized copies of DTW information including, but not limited to, quotes and proposals on pending and past projects, pay rates for various employees, memos, maintenance agreements with customers, and as-built drawing files.

All in violation of Title 18, United States Code, Sections 1832(a)(3) and (a)(4) and Section

2.

## COUNT FIVE

**THE GRAND JURY FURTHER CHARGES:**

On or about April 13, 2004, at Kewaskum, in the state and Eastern District of Wisconsin,

**SUMMIT REFRIGERATION GROUP, INC.**
**and**
**RICHARD DEGROOT,**

with intent to convert trade secrets, that were related to a product that is placed in interstate commerce, to the economic benefit of someone other than the owner thereof, and intending and knowing that the offense would injure the owner of those trade secrets, knowingly possessed trade secret information, knowing it to have been stolen and obtained without authorization of its owner, Dual Temp Wisconsin, and attempted to do so.

The trade secrets involved in this count were:

   a. Quote cover pages for projects with more than 20 customers; and

   b. Records on DTW's bases for bids on various projects, including items to be installed, labor rates, numbers of hours of labor, necessary material and equipment to be used, and confidential DTW drawings.

All in violation of Title 18, United States Code, Sections 1832(a)(3) and (a)(4) and Section 2.

13

# FORFEITURE ALLEGATIONS

As a result of the violations of 18 U.S.C. § 1832(a) charged in this indictment, defendants

**SUMMIT REFRIGERATION GROUP, INC.,
MICHAEL P. CONTI,
FREDERICK P. ANDERSON, and
RICHARD DEGROOT**

shall forfeit to the United States, pursuant to 18 U.S.C. § 1834(a) and (b) and 21 U.S.C. § 853:

1. Any property constituting, or derived from, any proceeds any defendant obtained, directly or indirectly, as the result of such violation;

2. Any of the defendants' property used, or intended to be used, in any manner or part, to commit or facilitate the commission of such violation, if the court in its discretion so determines, taking into consideration the nature, scope, and proportionality of the use of the property in the offense.

3. If, as a result of any act or omission of a defendant, any forfeitable property cannot be located upon the exercise of due diligence; has been transferred, sold to, or deposited with a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the court shall order the forfeiture of any other property of the defendant, up to the value of the property described in this paragraph.

*[signature]*
STEVEN M. BISKUPIC
United States Attorney

A TRUE BILL

Foreperson

Dated: 6-14-05